May it please the court. Thank you, Your Honor. I'm Craig Durham. I represent the appellant here. That's Lonnie Parlor. This is a sentencing appeal after a guilty plea to one count of felon in possession of a firearm. Mr. Parlor received the maximum sentence he could on that, which was 120 months or 10 years. And that's primarily because of the application of three sentencing enhancements that, when combined, effectively doubled his guidelines range. In the interest of time today, I intend to focus my argument primarily on the first issue in the brief, which is one of those enhancements, and that is the enhancement that the district court found that Mr. Parlor had possessed a firearm in connection with another felony offense, and here that was alleged to be drug trafficking. Now, it's our contention that there are several problems with this particular enhancement, but for today's purposes, I want to go right to the heart of it, and that was this. The district court's reliance on this vague out-of-court allegation that Mr. Parlor had bartered guns for drugs with a confidential informant at some time in the past, this is known as the bartering allegation in the case, that that was one of the material facts that the court found to support this enhancement, and it was simply wholly unreliable. The court should not have relied on that. Can you tell me where in the transcript you see that he did rely on it? Where in the transcript, Your Honor? Yes, of the sentencing hearing. Yes, if you give me just one second, I can pull that transcript up. Towards the end, the judge cites, in fact, there's some back and forth between the parties on this particular issue, and then what he ultimately decides is that Mr. Parlor's counsel had waived an objection to it, and so when that happened, he said that it was the end of the story for him, that that was conclusive. Your Honor, I might have to do this on rebuttal, but I know it's definitely in there and I can find it for the court. There was a discussion in 40 and 41. After discussing the proximity of the gun and the marijuana, the court goes on to say, equally important is the fact that he had, with the confidential informant, exchanged guns for drugs. That's exactly it. Thank you, Your Honor. That's exactly where it was. The fact of the matter is, the government here really argues, I think in their brief, that if you just exclude this bartering allegation, that the rest of the evidence is sufficient to uphold this enhancement. We really have two responses to that. The first is, I think that's not really, at least from our view, that's not a fair interpretation of how the district judge treated this particular allegation. As I had mentioned, he essentially came into the sentencing hearing and told the parties that he was somewhat concerned about the connection between the alleged drug offense and the firearm. There was some back and forth. There was a colloquy about that. Then he cited an out-of-circuit case, United States v. Wint, which essentially said that if you have bartering in the case, that's basically it, and that's sufficient to support the enhancement. I'm sorry, if you have what in the case? I think it was Wint, W-E-N-T. I know, but it said that if you have what in the case? If you have bartering of guns for drugs. Bartering, okay. Yeah, I'm sorry, I need to be a little more articulate about this. If there's bartering for drugs and guns, that is sufficient to uphold this enhancement. That's basically what the district court said. And so, it's our contention that the government is wrong about this. This was a material finding. Can I ask a question, a back-up question? Before this all questions. In order to get to any of these issues, the three later guns that were found have to be relevant conduct, at least to begin with. And then, are you contesting that or not? Yeah, that's part of it. That's the second issue in our brief, that these were separated sufficiently temporally and also in terms of time. The way this happened is, this was a buy-sell transaction where a confidential informant purchased two firearms from Mr. Parler. The government didn't indict Mr. Parler for about six weeks, and then they indicted him on that charge for possession of those firearms. They then arrested him on the indictment and conducted what they called a parole search, and that's when they found a small amount of marijuana in his house. There was the revolver under the mattress, and then the firearms that Your Honor is referencing. Those were found in a storage unit that was separate and apart from his house. Yeah, we are, absolutely. But if there was a problem, it would be a problem for all three firearms and all three enhancements, right? Well, yes and no, Your Honor. I mean, each enhancement, so there was an enhancement for multiple firearms. But if the gun found in the house wasn't, to begin with, an indice of relevant conduct because it was an illegal gun, then you wouldn't get to the drug trafficking issue. So it has to be connected up first. Right, yes, absolutely. No, I agree with Your Honor, and I think that's one of the major problems in the case. You know, we can argue about was there sufficient evidence for trafficking or marijuana distribution or whatever, and we certainly think there really wasn't. It was very thin. But the key, the real question is you have to connect the firearms to the drug trafficking. There has to be some kind of emboldening effect that the firearm had on the drug trafficking. Now, Vargham, which you rely on, cited some cases in which it appeared that there were illegal guns, you know, at about maybe the same time frame. Is that true or not? I mean, is the problem here the time frame that it was over six weeks? Yeah, Vargham was a little bit confusing, but I think what happened there is that individual was charged with modifying one of those, and he also possessed several others, but it ultimately turned out that he, they thought he had possessed those in violation of a restraining order. So it was a different theory. Isn't that a pretty important distinction, that the guns there were not, you know, possession of a machine gun was not related to possession of the legal guns that became illegal only because of the restraining order, because they were illegal for different reasons. But here, the charge is possession of a gun that he couldn't have because of his felony conviction. The other guns he also possessed illegally for the same reason. Why isn't it appropriate to treat those as related? Well, and again, Your Honor, I would separate. It's the difference in time, frankly, that we think is important, and the difference in where those guns were found. Those were found in a storage locker separate from his home six weeks later. And I understand the distinction from Bardram. But the point I really want to make is back on this first issue and the possession of a firearm in connection with a drug trafficking offense, because that was a four-level enhancement. What we're talking about here is the number of guns, which we also object to. But primarily on that first issue, the problem there is there's not a connection, there's not a nexus between the discovery of a revolver and a mattress. And what they alleged was marijuana trafficking. And maybe the best way to explain this is to look to the cases that the government relies on in their brief. And in each one of those cases, there was more than just proximity. In two of them, the gun was found in a car, I think, and the individual had been dealing drugs out of that car or in the vicinity of the car, and so you can really see the connection there. My vision is you have a revolver found in close proximity to drugs and drug paraphernalia and cash, lots of cash. And so why isn't that sufficient? It's not sufficient for a number of reasons, Your Honor. I mean, number one, the amount of marijuana that was found was less than an ounce. And, in fact, Mr. Parler was charged with a misdemeanor in state court. So there's some question there as to whether that's even a sufficient quantity. Now, I understand there was other indicia that was also found there. The cash was returned. Do you know where the other material was? The other materials were baggies. Does that mean little plastic baggies like you get? Yeah, I think it does. Like everybody has in their house, basically. Exactly, yes. Where were they? Well, my recollection is there were some on a nightstand or a dresser. The gun was a revolver, not a, you know, the one we're talking about in the house was a revolver, not an automatic weapon. And it was in a mattress. And then the small marijuana quantity was in a backpack in that same room. So, you know, what you don't have. And the digital scales, does that mean like little digital scales like you use? Yeah, there were two scales that were found. Like a full-sized one? Yeah, there were two scales that were found in the house. And from what my review of the record was, and I wasn't the attorney at trial, but my review is that these are kind of like food scales or postal scales or something of that nature. And so that's it. They had no concern. Were they in the same room or a different room? I think, well, I don't know. I can't answer that, Gerard. I'm not positive if they were in the same room. I want to say that one was in the same room and one was elsewhere in the house. But I'm not positive about that. But I think what's important is what wasn't there. There were no controlled buys from Mr. Parler. There was no surveillance of Mr. Parler. You know, nobody ever saw these drug transactions take place. So if you excise that confidential informant bartering allegation, there just isn't enough there. And the money, as I understand it, was found to belong to his wife or something? Yeah, it was given back to his girlfriend, yes. That's correct. So it wasn't, you know, it wasn't kept as evidence. So I believe my time is running out. That was before the sentencing? I think so. My recollection is that the state authorities who had conducted that search returned it to her. If I'm wrong, the government's counsel can certainly clarify that. But that's my recollection of it. If I could reserve a little bit of your time. Yes, please. Thank you. Hey, this is Eric Kate Hortz for the government. I'd like to start by just identifying the items found in the room and in the house and kind of answering some of the questions that linger about where things were found. And I would just note that these questions exist because this issue was not adequately raised before the district court. And so the government was not given an opportunity to fully develop the facts underpinning the circumstances of his possession of the firearm and the drug trafficking condition. It wasn't adequately raised. It was raised, wasn't it? No, it was not, Your Honor. And in fact— I don't have a whole discussion of it. I'm sorry? The court discussed it at some length. The court discussed it, and defense counsel also engaged in a back-and-forth with the court. The court twice offered defense counsel an opportunity to continue this sentencing to allow a full hearing on this evidentiary objection. And defense counsel, when faced with a fork in the road, do you want to continue and fully explore this objection, he chose not to do that. And that is excerpts of record, page 39—or excuse me, page 34 and 50. Hold on just a second. I'm sorry, Your Honor. 24 and 25. And I would just point the court to line 20 where defense counsel answers in response to the district court's solicitation of whether or not there should be a continuance in the hearing. Defense counsel says, right, and then moves on to his primary objection, which was a legal one, of suppression. Now, I want to clarify the record a little bit on the waiver issue. The underpinning facts supporting the application of this enhancement were in the initial PSR. The objection filed by defense counsel did not object to this specific fact, the hearsay fact I'll refer to it as. Then the final PSR and the addendum to the PSR included this fact again and relied on the fact for the enhancement. That's sealed excerpts of record 19 and 3. And then a couple weeks after the addendum was filed, defense counsel filed his sentencing memo, again not raising any objection to this fact. Then initially at the start of the sentencing, the district court solicited explicitly whether or not defense counsel objected to any fact in the PSR. Defense counsel represented that he did not. And then the government proceeded to make argument on both the objections and the overall sentence. During argument by defense counsel, he seemed to waver somewhat in his, well, waver is the wrong word. He seemed to be asserting a disputed fact as to the hearsay. And then when faced with this fork in the road, he chose not to pursue it. And that is... Tell me again where that is. I thought you said ER 39, but I don't see it there. I misspoke, Your Honor. I apologize. It's actually ER 24. And so the exchange begins on line 12 when the district court notes that there's been no objection raised in the sentencing memo. And he first offers to continue the sentencing at line 16. Defense counsel continues by saying, well, we're not sure if we agree with what the confidential informant said. And then on the following page, Excerpt of Record 25, line 8, again Judge Wendell offers to continue the sentencing to allow this objection to be heard and allow the government to present evidence in response to this objection. And instead of taking that opportunity and having been fully advised by the district court that this opportunity exists, defense counsel on line 20 says, right. And then he just turns to address the next legal issue that he raises in his objection, which is his Fourth Amendment violation argument, which is really the subject matter of his... Go ahead. Oh, I think she's frozen. In fact, I think everybody... Judge Wendell admonished him that if they allowed this additional witness to come and additional evidence... Ms. Horwitz, you're freezing every so often. Richard, can we do something? Unfortunately not, Judge. She's frozen for us as well. This is on Ms. Horwitz's end. Ms. Horwitz, the last 30 to 45 seconds has been frozen from you. I don't know how to... Can you hear me, Your Honor? Yes. Okay, I apologize for that. Essentially, our argument is that given multiple opportunities... That's what I don't understand. All of that discussion about having a hearing was about bringing in the confidential informant. Correct. Your brief really doesn't defend the confidential informant part. You say taking all that out. You don't really defend that. You instead ask us to affirm on the basis of the rest of the evidence, no? Well, there are two arguments. I think each is independently sufficient to affirm on this record. So first, we would cite that we don't need the hearsay statement in order to find that the district court did not clearly err in applying this enhancement. Now, the indicia of trafficking, the cash was found in the mail shirt pocket hanging in the closet... Is it true that the cash was later determined not to be his? Well, no. That's never... That actually is opposite to his representation in his sentencing memo where he says that it was his cash. It was found in a mail shirt. He represents that the cash was going to start a new business. But he had been unemployed since 2016 and says in his sentencing memo... What is this statement? The money was returned perhaps before sentencing. I don't know if that's so or not to someone else. I have no knowledge as to why the state authorities returned the money. But it is evidence of drug trafficking and it is indicia... Was it returned before the sentencing hearing? And was that brought up at the sentencing hearing? It wasn't brought up at the sentencing hearing, Your Honor. The underlying cash was cited in the PSR and undisputed as being his in the PSR. There was no objection raised to that fact. But it's not the only indicia of drug trafficking. We have multiple plastic baggies found on his dresser, found in his car the day of his arrest. And that's in addition to the controlled substance, which was found near the firearm placed under the mattress. And the marijuana was split into two separate baggies. Now, notably, when you look at Note 14B, it uses the disjunctive... When it says the firearm is found either... Well, it doesn't say either. It just says or. Controlled substance or drug trafficking indicia. So that seems to suggest that you don't need to have a controlled substance. But here we have both. We have a controlled substance and drug trafficking indicia. Now, I just want to briefly note that the Amendment 691, which added the application to Note 14A and 14B, which suffice to support the district court's enhancement here, were initially, I guess, promulgated in November of 2006. And so some of the cases that are cited and relied on for various reasons don't have the benefit of the Sentencing Commission's clarity in the application of this enhancement when a firearm is found close to controlled substances or drug paraphernalia. I'd like to briefly turn to relevant conduct because I think there are simply two separate challenges that are being raised here, neither of which distinguish or render the firearms not relevant conduct. First, VARGM makes clear that, as Judge Miller pointed out, when you have this same offense continuing throughout, and here it's 922G1, that remains static, that is a series of offenses and relevant conduct. That distinguishes VARGM, which was 922O, possession of a machine gun, versus a prohibited status, which ended up not being. Well, with regard to the illegal possession of guns, is there a time frame? Does it matter after which it's not relevant conduct? Well, Your Honor, I would just point again to VARGM and the Fifth Circuit case cited therein, Brummitt, where over a nine-month period, a 922G1 offense occurring on three separate occasions during that time frame was found to be temporally close enough to be relevant conduct. Here, both the opening brief and the government's answering brief incorrectly say it's six weeks. It's actually 11 weeks. It's 2.5 months. And that falls well below the nine-month period authorized in Brummitt and adopted in VARGM. I would also point out that in Pitts, the case cited in our response brief, there was a four-month period between the two series of events, and that that was deemed to be relevant conduct. So if there is a temporal limit, we are well inside of the nine-month mark that seems to be the outlier. We would ask that you affirm this sentence. Thank you. Thank you very much. Mr. Durham. Thank you, Your Honor. Can you eliminate this point about the money? Yes. So the point about the money is it was returned to Mr. Parlow's girlfriend. Now, whether he said it was his or hers or... Was that brought up in the sentencing hearing? You know, I don't recall whether that specific point was brought up at the hearing. I believe that was in the memorandum. Parlow said that it wasn't and that he agreed it was his money. Is that not right? Well, I think he's, you know, it could be his money, but it was given back to his girlfriend. The point is it was not kept as an evidentiary value for drug trafficking is what I was, you know, is the point I was trying to make. But I do want to address very briefly in the time I have this idea that counsel waived any further evidentiary development on the gun with the drug trafficking piece of it and the bartering allegation. If you read that in context, the issue they're talking about was a suppression issue, and counsel was arguing that the court should not consider any of the evidence was found because it was some violation of Mr. Parlow's Fourth Amendment rights. My recollection is that was not this issue we're talking about today. And I think if you look at excerpt of the record on page 37, when Judge Windmill addresses it, he says, okay, all right, thank you. Let me address the objections. And there was a moment ago I suggested we might need an evidentiary hearing, but I'm not going to put everyone through that because I think it's completely unnecessary. The objection to the information in the pre-sentence report about what the informant said about bartering guns with drugs with the defendant, it's not a timely objection. That should have been made within 14 days of the draft pre-sentence report. So it's our contention, and of course the record says what it says. But my memory is when counsel doesn't pursue this idea, they're talking about the Fourth Amendment suppression issue. They're not talking about this confidential informant issue. And so I just implore the court to look at that. Judge Windmill made that decision. He thought it was waived, and he went ahead and relied on it as a material finding as to that four-level enhancement. And so we would just ask that you would vacate the sentence and remand to re-sentence. Thank you, Your Honors. Thank you very much. Thank you both for your useful argument. The case of the United States v. Parler is submitted. We will go to Harry v. Washington State Department of Corrections, and we will then take a break.
judges: Berzon, Miller, Bress